Robert WARMSLEY, Plaintiff,

v.

NEW YORK CITY TRANSIT
AUTHORITY, Defendant.

No. 01–CV–4080(NG)(LB).

United States District Court,
E.D. New York.

Feb. 20, 2004.

Donna Lee, Brooklyn, NY, for Plaintiff.

Daniel Topper, Brooklyn, NY, for Defendant.

### ORDER

GERSHON, District Judge.

The defendant New York City Transit Authority has filed objections to the Report and Recommendation of Magistrate Judge Lois Bloom dated November 25, 2003, which recommends that defendant's motion for summary judgment be denied and that plaintiff's motion for summary judgment on the issue of liability be granted. I have reviewed the objections, to which plaintiff has responded, under the *de novo* standard of review required by Rule 72(b) of the Federal Rules of Civil Procedure.

Based upon that review, I now adopt the Report and Recommendation in its entirety. Judge Bloom addressed the factual and legal issues presented in a thorough and thoughtful way, and I agree fully with her analysis and conclusions. Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment on liability is granted.

**SO ORDERED.**

### REPORT AND RECOMMENDATION

BLOOM, United States Magistrate Judge.

The Honorable Nina Gershon, United States District Judge, referred the parties'

cross-motions for summary judgment to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is recommended that defendant's motion for summary judgment should be denied and that plaintiff's motion for summary judgment on liability should be granted.

## BACKGROUND

The New York City Transit Authority ("NYCTA" or "defendant") is a public benefit corporation created by the State of New York for the purpose of operating transit facilities and other related functions. (Def. Responsive 56.1 Statement ¶ 1.) The NYCTA employs over 40,000 individuals in approximately 1,200 job titles. (Topper Decl. ¶ 2; Pl.Ex. 2 at 14.) Almost all of these job titles require that a prospective employee pass a civil service exam and be placed on a civil service list. (Pl. Ex. 2 at 81.) The list ranks individuals according to their exam scores and remains in existence for up to four years. (*Id.* at 96, 101.)

In 1991, plaintiff passed an open competitive civil service exam for the position of Assistant Workers' Compensation Benefits Examiner. (Def. 56.1 Statement ¶ 2.) This is an administrative title utilized by several city agencies in addition to the NYCTA, including the Law Department, the Department of Corrections, and the Housing Authority. (Pl.Ex. 17.) The basic duties of the Assistant Workers' Compensation Benefits Examiner includes: reviewing accident reports to determine whether a claim is covered by worker's compensation; preparing written materials to send to affected parties and agencies; entering information into computer files; responding to telephone calls from workers compensation claimants, attorneys and physicians; preparing recommendations for compensation; and processing payments. (Def. Ex. 1; Pl.Ex. 1 at 42.) Plaintiff placed 63rd on the civil service list and was hired by the NYCTA on or about December 20, 1993. (Def. 56.1 Statement ¶ 2.) Plaintiff performed well on the job and received positive evaluations from his direct supervisor. (Pl.Ex. 6 ¶ 2.)

In September 1994, after working for approximately nine months, plaintiff required a medical leave having been diagnosed with terminal renal failure. (Def. 56.1 Statement ¶ 4; Pl.Ex. 1 at 49.) In November 1995, the NYCTA notified plaintiff in writing that "pursuant to section 73 of the Civil Service Law, the Transit Authority intends to terminate your employment effective December 30, 1995." (Pl.Ex. 11.)[1] Plaintiff was thereafter terminated. (Def. 56.1 Statement ¶ 6.)

With exceptions not relevant here, N.Y. Civ. Serv. Law § 73 [hereinafter " § 73"] provides that "[w]hen an employee has been continuously absent from and unable to perform the duties of his position for one year or more by reason of a disability . . . his employment status may be terminated and his position may be filled by a permanent appointment." The statute also provides, however, that the terminated employee may reapply for his position "within one year after the termination of such disability." (*Id.*) A former employee seeking reinstatement is examined to determine whether he "is physically and mentally fit to perform the duties of his former position" and, if so, is "reinstated to his former position." (*Id.*) If no vacancies exist in the employee's former position or a similar one, the former employee is

---

**1.** Plaintiff contends that he did not receive this letter and believed he remained on indefinite medical leave. (Pl.Ex. 1 at 53, 56.)

placed on a "preferred list" for a period of four years. (*Id.*)

In April 1998, plaintiff contacted Janet Holt, his former supervisor, to request reinstatement because his condition had stabilized. (Pl.Ex. 6 ¶ 5.) Holt stated that she "would be happy" to have plaintiff return "if it was up to her" but that plaintiff had to contact the personnel department. (Pl. Ex. 1 at 58.) Plaintiff ultimately contacted Cheryl McCall, Senior Director of Sourcing, who directed plaintiff to submit a letter from his doctor stating that he was able to return to full duty. (Pl.Ex. 6 ¶ 5.) On or about April 22, 1998, plaintiff submitted a letter from his treating physician, stating "Mr. Warmsley has been a patient under my care since October 13, 1994. He has End Stage Renal Disease on maintenance hemodialysis three times a week. He may return to work as a Benefit Examiner full time as of April 10, 1998." (Pl.Ex. 15; Pl.Ex. 6 ¶ 6.)

Alan Genser, M.D., was the MTA NYCTA employee responsible for reviewing all requests for reinstatement under § 73. (Pl.Ex. 4 at 15.) Genser would review the medical documentation submitted by the former employee to determine whether to grant the medical examination necessary for reinstatement. (*Id.* at 15, 25–26, 28.) Genser interpreted the language of § 73 literally and looked for terminology in the treating physician's recommendation that the former employee's "disability has terminated." (*Id.* at 30–31, 79–80, 104–05.) Absent such language or "unless it was absolutely 100 percent clear in [Genser's] mind that the disability has obviously terminated" (*id.* at 39) Genser would refuse to grant the medical examination necessary for reinstatement even if the reinstatement request indicated that the employee was medically cleared to return to work and could perform the essential functions of the job. (*Id.* at 32–35, 105.) [2]

Consistent with this policy at the time, Genser denied plaintiff's request for a medical examination. (*Id.* at 58.) On April 27, 1998, Genser wrote to McCall explaining that plaintiff's "disability must have terminated completely." (Pl.Ex. 14.) Genser was also concerned that there were no medical standards to evaluate someone like plaintiff who was seeking reinstatement to a clerical position. (Pl.Ex. 4 at 59–60.) On April 30, 1998, McCall wrote to plaintiff stating that "no medical examination will be scheduled at this time" because "[t]he medical documentation that was provided does not indicate your disability has terminated." (Pl.Ex. 15.)

On August 27, 1998, plaintiff filed a charge of discrimination with the Equal

---

**2.** Genser testified that he was continuing the policy initiated by the New York City Department of Citywide Administrative Services ("DCAS"). In 1997, DCAS delegated its authority to conduct § 73 medical examinations to the NYCTA. During the transition, DCAS wrote to NYCTA that

there are approximately a half-dozen cases that are being forwarded to your unit for whatever your office deems appropriate. These individuals allege that they are permanently partially disabled but able to perform their duties. Since the Civil Service Law mandates that an individual's disability be "terminated" before an exam is scheduled, no examinations were scheduled by this office. However, in compliance with federal law and union contracts, your office will be able to determine whether any "reasonable accommodation" can be made for these individuals.

(Pl.Ex. 16.) Beginning in November 2002, Genser changed his policy and granted medical examinations upon being informed that the former employee "has healed sufficiently that he could go back to work without restrictions." (Pl.Ex. 4 at 41–42, 92.) Also in November 2002, DCAS agreed "that the 'disability terminated' language is problematical [sic] as a description for the restoration: it should be dependent upon the person being able to perform the essential functions of his/her position (with or without a reasonable accommodation)." (Pl.Ex. 19.)

Employment Opportunity Commission ("EEOC") claiming disability discrimination under the Americans with Disabilities Act ("ADA"), 104 Stat. 328, 42 U.S.C. § 1201 *et seq.* (Pl.Ex. 13.) The NYCTA responded to the charge by asserting that, "[a]lthough [plaintiff] submitted medical documentation stating that he was able to return to work, the documentation failed to disclose whether or not [his] disability had terminated and whether such termination was within the past year as required by Civil Service Law § 73." (Pl.Ex. 24 at 2.) On March 31, 1999, the EEOC found reasonable cause to believe that NYCTA's policy that an employee's disability must be terminated violates the ADA as it "ostensibly precludes individuals with continuing disabilities the right to medical review and reinstatement." (Pl.Ex. 25.)

The instant federal complaint followed. Significantly, the NYCTA does not defend its "disability has terminated" policy; rather, it argues that plaintiff was not entitled to reinstatement under § 73 because he failed to complete his one-year probationary period before being placed on medical leave. The parties have crossed-moved for summary judgment.

## DISCUSSION

### I.  *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine material issue of fact requiring a trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1535 (2d Cir.1997) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S.

574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 398 (2d Cir.2000).

"When a motion for summary judgment is made and supported ..., an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348. In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Niagara Mohawk Power Corp. v. Jones Chemical, Inc.,* 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Id.* (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505).

Where, as here, "cross-motions for summary judgment are filed, a court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Boy Scouts of America v. Wyman,* 335 F.3d 80, 88 (2d Cir.2003) (quoting *Hotel Employees & Rest. Employees Union, Local 100 v. City of New York Dep't of*

*Parks & Recreation,* 311 F.3d 534, 543 (2d Cir.2002)).

## II. *The ADA*

■ The ADA provides that an employer shall not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to make out an ADA claim, the plaintiff must show that: (1) his employer is subject to the ADA; (2) he is disabled under the ADA; (3) he is otherwise qualified to perform the essential functions of the job with or without a reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir.2001).

Here, the NYCTA does not contest that it is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5)(A) (defining an "employer" as a "person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year"), or that plaintiff was able to perform the essential functions of the job. Thus, the Court must decide whether there are genuine material issues of fact regarding the second and fourth elements of plaintiff's ADA claim.

### A. *Disability under the ADA*

■ The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities...; (B) a record of having such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). An individual is thus disabled within the meaning of the ADA if he "(1) suffers from a physical or mental impairment, that (2) affects a major life activity, and (3) the effect is 'substantial.'" *Regional Economic Community Action Program, Inc. v. City of Middletown,* 281 F.3d 333, 344 (2d Cir.2002). Alternatively, an individual is disabled under the ADA if he is perceived as disabled by his employer. 42 U.S.C. § 12102(2)(C). "This turns on the employer's perception of the employee, a question of intent, not whether the employee has a disability." *Francis v. City of Meriden,* 129 F.3d 281, 284 (2d Cir.1997). "It is not enough, [therefore], that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled *within the meaning of the ADA.*" *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 646 (2d Cir.1998) (emphasis in original). There are two ways an employee can be regarded as disabled under the ADA: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

Plaintiff argues that the record establishes that NYCTA considered him substantially limited in the major life activity of working.[3] The Supreme Court has held

---

3. Plaintiff also argues that he is disabled in fact under the ADA as his renal failure substantially impairs his ability to care for himself and to perform manual tasks. Plaintiff

alleges that "he gets particularly tired, requiring bed rest for a few hours before he feels strong enough to continue with his everyday activities," that he requires the daily assis-

that "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139. Thus,

[t]o be substantially limited in the major life activity of working, . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Id.* at 492, 119 S.Ct. 2139; *see Colwell,* 158 F.3d at 647 ("To prove that they were regarded as substantially limited in their ability to work, the officers bore the burden of proving that the County 'perceived [them] to be incapable of working in a broad range of jobs' suitable for persons of their age, experience, and training.") (quoting *Ryan v. Grae & Rybicki,* 135 F.3d 867, 872 (2d Cir.1998)).

■ Here, there is no factual dispute regarding the NYCTA's § 73 reinstatement policy. Dr. Genser was responsible for reviewing all medical requests for reinstatement. (Pl.Ex. 4 at 15.) Under Genser's strict interpretation of § 73, only if a

former employee's "disability ha[d] terminated" would that employee be deemed capable of reinstatement to a NYCTA position. (*Id.* at 30–31, 79–80, 104–5.) Any former employee who could not obtain medical documentation that he was disability-free, or who could not convince Genser that "it was absolutely 100 percent clear . . . that the disability ha[d] obviously terminated," was excluded from working from the NYCTA. (*Id.* at 39.) This determination was made without regard to the employee's condition or to the requirements of the job in question. NYCTA's reinstatement policy, therefore, did not merely preclude plaintiff's reinstatement to "one type of job, a specialized job, or a particular job of choice," *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139, it precluded reinstatement for plaintiff and *all* former employees with a continuing disability to *all* NYCTA jobs. *See Henderson v. Ardco, Inc.,* 247 F.3d 645 (6th Cir.2001) ("[w]here the 100% [healed] rule is applied to mildly impaired persons to exclude them from a broad class of jobs, it may be treating them as disabled even if they are not, thereby qualifying them for protection under the ADA"). This is significant as the NYCTA maintains over 1,200 job titles. (Topper Decl. ¶2; Pl.Ex. 2 at 14.) However, the only individuals required to be disability-free were those who had previously taken a medical leave. (*See* NYCTA Mem. May 13, 2002, at 16)

---

tance of a home attendant to help him cook, clean and do laundry, and that either the home attendant or his mother is required to go shopping for him as he cannot lift, push or pull heavy objects. (Pl. Mem. at 14–15.) Because plaintiff has established as a matter of law that the NYCTA regarded him as disabled, the Court need not reach whether plaintiff is disabled in fact under the ADA. *Compare Ryan v. Grae & Rybicki,* 135 F.3d 867, 871 (2d Cir.1998) ("[a]ssuming without deciding that the ability to control one's elimination of waste is a major life activity"); *Gilbert v. Frank,* 949 F.2d 637, 641 (2d Cir.1991) ("We

are inclined to view persons whose kidneys would cease to function without mechanical assistance, or whose kidneys do not function sufficiently to rid their bodies of waste matter without regular dialysis, as being substantially limited in their ability to care for themselves.") *with Roush v. Weastec, Inc.,* 96 F.3d 840, 844 (2d Cir.1996) (finding "that plaintiff's kidney condition does not constitute a disability within the meaning of the ADA" where the condition was "temporary" and "no longer affect[ed] [the plaintiff's] ability to work").

(admitting that § 73 test did not apply to new hires). Accordingly, there is no genuine material issue of fact in dispute that the NYCTA, by implementing its "disability has terminated" policy, required individuals returning from medical leave to be disability-free. Thus, NYCTA regarded every former employee who had taken a medical leave as "substantially limited" in his ability to work in a broad range of jobs.

There is also no factual dispute that the NYCTA's reinstatement policy operated precisely as intended in plaintiff's case. After leaving his position for medical reasons in 1994, plaintiff was medically cleared by his doctor to return to work in 1998. (Pl.Ex. 6 ¶ 5.) Plaintiff submitted medical documentation to NYCTA stating that, although he had end stage renal disease, he was capable of returning to his former full-time position as a benefits examiner. (Pl.Ex. 15; Pl.Ex. 6 ¶ 6.) In accordance with the NYCTA's policy at the time, Genser concluded that plaintiff could not be reinstated until his disability had "terminated completely." (Pl.Ex. 14.) Genser made this determination solely upon plaintiff's medical documentation which reflected that plaintiff still suffered from renal failure. (Pl.Ex. 15.) Genser did not consider the seriousness of plaintiff's condition nor its impact on plaintiff's ability to perform the essential functions of his job and, in fact, disregarded the conclusion of plaintiff's doctor that plaintiff was able to return to full duty. (*Id.*) Plaintiff, therefore, was presumptively regarded as unable to work in any NYCTA job because of his condition. *See Conroy v. New York State Dep't of Correctional Services,* 333 F.3d 88, 96 (2d Cir.2003) ("Even where a diagnosis alone is not sufficient to establish than an employee is disabled, the diagnosis may give rise to the *perception* of a disability, and discrimination on the basis of a perceived disability is also prohibited by the ADA.") (emphasis in original)

The NYCTA argues that "the evidence shows only that [plaintiff] was regarded as unable to be reinstated to one job for one employer." (N.Y.CTA Mem. May 13, 2003, at 18.) This argument is without merit for two reasons. First, plaintiff was not merely denied the opportunity for reinstatement to the specific job he previously held, but, according to the terms of § 73 to any "similar position or a position in a lower grade in the same occupational field." Second, and more importantly, the NYCTA's "disability has terminated" policy applied across the board to plaintiff and to every NYCTA position. It therefore made no difference what position plaintiff was seeking reinstatement to. The result would have been the same had he applied for reinstatement as a station agent, conductor, his old job as a Workers' Compensation Benefits Examiner, or any one of the other 1,200 NYCTA jobs. Indeed, it is conceded that in denying plaintiff's reinstatement application, Genser did not consider the needs of the position plaintiff previously held but was only concerned with whether plaintiff could show that his "disability has terminated."

For these reasons, plaintiff has established as a matter of law that the NYCTA regarded him as "substantially limited" in his ability to work in a broad range of jobs. Accordingly, plaintiff was perceived as disabled by his employer within the meaning of the ADA.

### B. Causation

■ "The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met [his] burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason." *Gonzalez v. Rite Aid of New York, Inc.,* 199 F.Supp.2d 122, 130 (S.D.N.Y.2002)

(quoting *Stratton v. Dep't for the Aging*, 132 F.3d 869, 878 (2d Cir.1997) (citations omitted)). In the ADA context, a plaintiff must show that "he suffered an adverse employment action *because* of his disability." *Giordano*, 274 F.3d at 747 (emphasis added).

■ Plaintiff easily meets this requirement here. Genser admits that he denied plaintiff's request for reinstatement because plaintiff could not show that his disability had "terminated completely." (Pl. Ex. 14.) Plaintiff was also sent a letter from Cheryl McCall, Senior Director of Sourcing, explaining that "[t]he medical documentation that was provided does not indicate that your disability has been terminated; therefore, no medical examination can be scheduled." (Pl.Ex. 15.) The letter further advised plaintiff that "[o]nce you have appropriate medical documentation as to the termination of your disability, you may make another request for a medical examination." (*Id.*)

Courts have "consistently found" that such "100% healed" or "fully healed" policies violate the ADA. *Equal Employment Opportunity Commission v. Yellow Freight System, Inc.*, No. 98 CIV. 2270, 2002 WL 31011859, at * 20 (S.D.N.Y. Sept. 9, 2002); *see McGregor v. National R.R. Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir.1999) ("'100% healed' policies are per se violations of the ADA. A '100% healed' or 'fully healed' policy discriminates against qualified individuals with disabilities because such a policy permits employers to substitute a determination of whether a qualified individual is '100% healed' from their injury for the required individual assessment whether the qualified individual is able to perform the essential functions of his or her job either with or without reasonable accommodation."); *Beveridge v. Northwest Airlines, Inc.*, 259 F.Supp.2d 838, 848 (D.Minn.2003) (a "[100

percent healed] policy would ignore the individualized assessment that is required by the ADA, in favor of a categorical, generalized appraisal, and thus, would 'run[ ] afoul of the ADA.'") (citation omitted); *Allen v. Pacific Bell*, 212 F.Supp.2d 1180, 1196 (C.D.Cal.2002); *Hasbrouck v. Youth Services Int'l, Inc.*, No. C01–3050, 2002 WL 1974043, at * 2 n. 3 (N.D.Iowa Aug. 19, 2002) ("This court has held previously that a '100% healed' policy is a *per se* violation of the ADA because it fails to make an individualized assessment of a person's 'ability to perform the essential functions of the person's job with or without accommodation following injury and resulting permanent disability, but substitutes for this inquiry simply a determination of whether the person is '100% healed' from the injury.'") (Quoting *Hutchinson v. United Parcel Service*, 883 F.Supp. 379, 396–97 (N.D.Iowa 1995)); *Norris v. Allied–Sysco Food Services, Inc.*, 948 F.Supp. 1418, 1437 (N.D.Cal.1996) (a policy which prohibits an employee from returning to work unless she can do so "without medical restrictions" would be a "*per se* violation of the ADA's requirement that employers reasonably accommodate employees with disabilities"); *Heise v. Genuine Parts Co.*, 900 F.Supp. 1137, 1154 n. 10 (D.Minn.1995) ("The court notes that a '100% healed' policy is a *per se* violation of the ADA as such a policy does not allow for a case-by-case assessment of an individual's ability to perform the essential functions of the individual's job, with or without an accommodation.").

Accordingly, there is no genuine issue of material fact in dispute that plaintiff was denied a job opportunity *because* of the NYCTA's "disability has terminated" policy and because NYCTA regarded plaintiff as disabled.

### C. *Adverse Employment Action*

The NYCTA nevertheless argues that plaintiff suffered no adverse employment

action because he did not have a property interest in his position with the NYCTA. This argument flows from defendant's position, adopted for the first time after the complaint was amended in this Court, that plaintiff was never entitled to reinstatement under § 73. More specifically, the NYCTA asserts that the § 73 reinstatement program is only available to former employees who have completed a one-year probationary period and, because plaintiff worked for the NYCTA for approximately nine months, he did not have a right to reinstatement under § 73. The NYCTA's argument is without merit.

■ The NYCTA misconstrues the fundamental purpose of the ADA. The ADA is not designed to create or protect property interests in employment; rather, by its own terms, it is designed to prevent "discriminat[ion] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). That an individual cannot establish a property interest in employment simply has no bearing on an ADA claim. As the Second Circuit reasoned in the context of an employment discrimination action under Title VII of the Civil Rights Act of 1964,

> [w]hether appellants ... have a property right in the[ir] [positions] simply has nothing to do with th[e] issue from either point of view. While it is the case that a provisional [employee] might not be entitled to procedural due process in a termination proceeding based on poor performance because of a lack of a property interest, an adverse employment

action based on race, ethnicity, or gender is clearly illegal. To hold otherwise would require civil rights plaintiffs generally to show a property interest in the position in question.

*Brennan v. N.Y.C. Board of Education,* 260 F.3d 123, 131 (2d Cir.2001);[4] *see Yellow Freight System,* 2002 WL 31011859, at * 20–21 (S.D.N.Y. Sept. 9, 2002) (rejecting as "specious" an employer's argument that it did not violate the ADA because the plaintiff had "no right under [the contract between the union and the employer] to return to work").

■ The NYCTA's "probationary status" argument also fails because it addresses the wrong question. The issue is not whether the NYCTA can articulate a disability-neutral reason for its employment decision when pressed to do so by plaintiff's lawsuit, but whether it was motivated by a legitimate non-discriminatory reason at the time the employment decision was made. *See Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 337 (2d Cir.2000) (the final element of an ADA claim asks only whether "disability played a motivating role in the [adverse employment] decision"). The NYCTA, therefore, "may not prevail [on the issue of liability] ... by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 252, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *see, e.g., McKennon v. Nashville Banner Publ'g Co.,* 513 U.S. 352, 360, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (evidence of employee misconduct discovered after the employee has been terminated does not protect an employer from a finding of liability because "[t]he employer could not

4. Claims under the ADA and Title VII are analyzed under the same framework. *Regional Economic Community Action Program,*

*Inc., v. City of Middletown,* 281 F.3d 333, 347–49.

have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reasons").

Whether the NYCTA's late "discovery" that plaintiff was a probationary employee has a bearing on plaintiff's damages is not before the Court at this time. There are circumstances in which equity would limit a plaintiff's damages. For example, an employee who would have been fired as a result of misconduct discovered by the employer during the lawsuit is limited to "backpay from the date of the unlawful discharge to the date the new information was discovered." *McKennon,* 513 U.S. at 362, 115 S.Ct. 879. Here, however, there is no employee misconduct and the NYCTA should have known of its own probationary policy at the time it denied plaintiff's reinstatement request. Its claim that it mistakenly considered plaintiff for reinstatement under § 73 rings hollow. Defendant's "mistake" in sending plaintiff the reinstatement letter in November 1995 which put the events in motion for Dr. Genser to deny plaintiff's request for a medical examination in April 1998 cannot now be simply disavowed. Moreover, there is no suggestion of any wrongdoing on plaintiff's part and therefore, considerations of equity weigh in plaintiff's favor.

Here, there is no factual dispute about why plaintiff was denied reinstatement. By Genser's own admission, the sole reason plaintiff was denied reinstatement is because plaintiff could not show that his "disability ha[d] terminated." No other reason was given at the time, nor does the NYCTA suggest any other reason existed. That, according to the NYCTA, it would have made the same decision on the non-discriminatory basis that plaintiff had failed to complete his one-year probationary period prior to going on medical leave is immaterial since the NYCTA has failed to submit any evidence that it took plain-

tiff's probationary status into account "at the time of the decision." *Hopkins,* 490 U.S. at 252, 109 S.Ct. 1775. Indeed, Genser admitted that when he denied plaintiff's reinstatement application he was unaware that plaintiff was a probationary employee. (Pl.Ex. 4 at 121–23.) Cheryl McCall, who notified plaintiff in writing that he could not be reinstated because his disability had not terminated, admitted that a former employee's probationary status was never an issue in evaluating a request for reinstatement under § 73. (Pl. Ex. 3 at 84.) In short, the NYCTA has failed to submit any evidence that it was motivated by anything other than plaintiff's disability when it denied plaintiff employment. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) ("In a disparate treatment case, liability depends on whether the protected trait .... actually motivated the employer's decision.")

Plaintiff has thus established as a matter of law that he was denied an employment opportunity in violation of the ADA "because of" his disability. 42 U.S.C. § 12112(a).

## CONCLUSION

Accordingly, because there is no genuine issue of material fact in dispute, the Court should find as a matter of law that (1) the NYCTA regarded plaintiff as disabled within the meaning of the ADA and (2) the NYCTA denied plaintiff's reinstatement request because of plaintiff's perceived disability. Therefore, it is recommended that the NYCTA's motion for summary judgment should be denied and that plaintiff's motion for summary judgment on liability should be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made to the District Judge within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. *Marcella v. Capital District Physician's Health Plan, Inc.,* 293 F.3d 42 (2d Cir.2002); *Small v. Sec'y of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *see Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

SO ORDERED.