**Vincent VAN, Plaintiff,**

v.

**MIAMI–DADE COUNTY, Defendant.**

**No. 06–23009–CIV.**

United States District Court,
S.D. Florida.

Aug. 16, 2007.

Sean Michael Cleary, Sean M. Cleary Law Offices, Miami, FL, for Plaintiff.

Lee Alan Kraftchick, Dade County Attorney's Office, Miami, FL, for Defendant.

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment, filed June 1, 2007 (D.E. 22) and Plaintiff's Motion for Partial Summary Judgment, filed June 27, 2007 (D.E. 38).[1] The motions have been fully briefed and are ripe for disposition.

Plaintiff brings this action seeking damages for discrimination pursuant to the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101, *et. seq.*, and the Florida Civil Rights Act (the "FCRA"), Florida Statutes, § 760.01, *et seq.* against Defendant Miami–Dade County (the "County"). Plaintiff also claims that Defendant failed to provide reasonable accommodations under the ADA, 42 U.S.C. § 12112. Defendant moves this

1. Plaintiff filed a request for oral argument on both motions. (D.E. 39). After carefully reviewing the arguments of the parties, the Court finds that a hearing is unnecessary to resolve the cross motions for summary judgment. Therefore, Plaintiff's request for a hearing is denied.

Court for an entry of summary judgment, arguing that the undisputed facts show that Plaintiff is neither disabled nor regarded as disabled, and thus, he is not protected by the ADA or the FCRA. Plaintiff filed a cross motion for partial summary judgment, arguing that the undisputed facts demonstrate that the County regarded Plaintiff as disabled in violation of the ADA and the FCRA and failed to provide reasonable accommodations to him.

## FACTS

The following facts are undisputed and are based on the concise statement of stipulated facts contained in the parties' Joint Pretrial Stipulation ("JPS"), unless otherwise noted. Plaintiff, Vincent Van, was employed as a Miami–Dade County correctional officer beginning in June 13, 1988. (JPS Stip. Facts ¶ 1.) As a correctional officer, his duties included the care, custody and transport of inmates in County correctional facilities. (*Id.*) In 1992, Van was diagnosed with Type II non-insulin dependent diabetes. (*Id.* ¶ 2.) As of 1992, the Corrections Department (the "Department") has known of his condition. (*Id.*) Van continued his work as a correctional officer without incident until April 7, 2005, when the County received the results of a biannual examination. (*Id.*)

The examining physician Dr. Kenneth Kaplan concluded that Van's diabetes was not under control and that he would not be allowed to perform the safety sensitive duties of a correctional officer and would be placed on restricted duty. (*Id.*) Dr. Kaplan formed his opinion on the basis of a Hemoglobin Alc (He Alc) test result. The He Alc test is a common laboratory test used to determine the average amount of glucose (sugar) that has been in a person's blood over the preceding three months. In Dr. Kaplan's opinion, an He Alc test result of 7.0% or less is considered normal for a diabetic patient who has his diabetes under control, while a test result of 8.0% or above is "out of control." (*Id.* ¶ 4.) Dr. Kaplan advised Van that he would be released to full duty as soon as Van was able to provide a He Alc test result showing that his sugar level was 8.0% or less. (*Id.* ¶ 3, 5.)

The Department has an employee fitness policy limiting the period an employee can be placed on restricted duty. (*Id.* ¶ 6). The policy permits employees recuperating from non-job related illnesses or injuries to be assigned to a restricted duty position for a period of three months, with the possibility for an extension for another three months, up to a maximum of six months. (*Id.*; DSMF Ex. 4.) At the conclusion of the sixth month period, the employee is placed on compulsory leave. (*Id.*)

Prior to being placed on restricted duty, Van worked Monday through Friday, from 4:30 a.m. to 12:30 p.m., transporting inmates. On April 8, 2005, the Department directed Van to report to work at a restricted duty position at the Pre–Trial Detention Center (PTDC) on the 7:00 a.m. to 3:00 p.m. shift with Saturdays and Sundays off.[2] (JPS Stip. Facts ¶ 7.) On April 20, 2005, Van reported to the Department's Personnel Bureau that, for personal reasons, he could not immediately begin working on the assigned shift and asked to be placed on paid annual leave. (*Id.*) The Department granted the request. Also on

---

**2.** When the Department places an employee in a temporary restricted position, it makes an effort to maintain the employee's shift schedule and days off. (Quinoa Dep. 11:3–12:21). Van's prior schedule could not be accommodated because no restricted duty positions offered the same shifts as his specialized transportation bureau position. (Quinoa Dep. 21:25–22:24).

or about April 20, Van's personal physician submitted a written opinion regarding Van's ability to return to work. Van himself submitted a memo on April 25, 2005 requesting a hearing to refute Dr. Kaplan's decision. (*Id.*)

On July 6, 2005, Van asked to return to work. Thereafter, on July 8, 2005, Van was placed in a restricted duty assignment on the 11:00 p.m. to 7:00 a.m. shift with Monday and Tuesday off. (*Id.* ¶ 8). Van then provided the Department with a note from his physician requesting that Van be moved to a day shift such that he would be better able to follow the instructions for his medication and his special diet and the physician could better monitor him. (*Id.* ¶ 9.) The Department granted the request and placed Van in a restricted duty assignment at the PTDC on the 7:00 a.m. to 3:00 p.m. shift with Mondays and Tuesdays off. (*Id.*) Subsequently, Van worked on restricted duty at the PTDC and later in Court Services where he monitored inmates and other corrections officers via television monitors. (*Id.*) His work continued for an initial three month period and an additional three month period-granted pursuant to the employee fitness policy. (*Id.*)

During this time, Van also continued to have his diabetes monitored by his personal physicians. (*Id.* ¶ 11.) While Van's doctors felt that Van was well enough to return to work and communicated this information to Dr. Kaplan, Dr. Kaplan declined to take Van out of restricted duty until his He Alc level dropped below 8.0%. (*Id.*) An He Alc test on July 19, 2005 produced a result of 9.5%. (*Id.*) On July 26, 2005, Van submitted a memorandum to Charles McCray, Director of Corrections, concerning the decision to place him on restricted duty. Van's physician, Dr. Barrau, also submitted a written opinion regarding Van's ability to return to work on full duty. (*Id.* ¶ 10.) An additional test on November 7, 2005 produced a result of 10.7%. (*Id.*) Because Van's He Alc level never dropped below 8.0%. Dr. Kaplan declined to release him to full duty. (*Id.*)

On December 22, 2005, Director McCray informed Van that he would soon be placed on compulsory leave. (*Id.* ¶ 12.) On January 11, 2006, the Department notified Van in writing that he would be placed on compulsory leave effective January 17, 2006. (*Id.* ¶ 14.) On January 18, Van's private physician ordered an He Alc test producing a result of 9.4%. (*Id.*) While on compulsory leave, Van received paychecks which represented payments of sick and annual leave accrued during his employment. (*Id.*) Van continued to have his He Alc level monitored while on leave. An April 27, 2006 test produced a result of 15.2%. (*Id.* ¶ 16.) Also during this period, Van's physician Dr. Barrau provided additional opinions regarding Van's ability to return to work.

When Van had exhausted his paid leave, he tried to convince the Department to reinstate him or to extend his restricted duty. (*Id.*) The Department did not reinstate him, and on May 24, 2006, Van submitted a letter of resignation effective June 5, 2006. (*Id.* ¶ 17.) On May 12, 2006, Van filed a charge with the EEOC alleging that he was "considered as disabled by [the Department's] physician." (*Id.* ¶ 18.) The County responded to the charge. Van then requested, and the EEOC issued, a right to sue letter. (*Id.*) Thereafter, Van filed this action. (*Id.*)

Van did not apply for another County job before he resigned, and as of the time of his deposition, on April 30, 2007, he had not reapplied for a job as a correctional officer. (Van Dep. 5:24–6:3, 7:22–8:5, 31:25–33:2, 157:16–18, 158:13–23.) Around one week prior to the April 30, 2007 deposition, Van's doctor informed him that his He Alc level was 6.0%. (Van Dep. 170:12–171:3.)

## LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the nonmoving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).[3] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

■ Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505.

## LEGAL ANALYSIS

■ Defendant argues that the undisputed facts show that Plaintiff is neither disabled nor regarded as disabled, and thus, he is not protected by the ADA or the FCRA. Plaintiff's cross motion for partial summary judgment argues that the undisputed facts demonstrate that the County regarded Plaintiff as disabled in

**3.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

violation of the ADA and the FCRA and failed to provide reasonable accommodations to him. The Court agrees with the parties that the facts relevant to a determination of whether Van is protected under the ADA and the FCRA are not in dispute and summary judgment is appropriate on the issue of whether Van is protected under the statutes. Based on the undisputed facts, the Court agrees with Defendant that Van is neither disabled nor regarded as disabled. As such, Van cannot sustain a suit under the provisions of the ADA and the FCRA and the suit must be dismissed.[4]

■ A *prima facie* case of employment discrimination under the ADA requires the Plaintiff to show that he: (1) has a disability; (2) is qualified, with or without reasonable accommodations, to perform the essential functions of his job; and (3) was unlawfully discriminated against because of his disability. 42 U.S.C. § 12112(a); *see Willis v. Conopco, Inc.,* 108 F.3d 282, 283 (11th Cir.1997). A "disability" is defined as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual:

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12112(a); *see also Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 478, 488–9, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Throughout this litigation, Van has maintained that his diabetes does not affect his major life activities. (*DSMF* Ex. 3, EEOC Charge of Discrimination; Dep. Van at 39–40). Therefore, Van's ability to claim the protections of the ADA hinges

upon whether he can show that the Department "regarded" him as having an impairment that substantially limits one or more of his major life activities. "Subsection (C) provides that having a disability includes 'being regarded as having,' § 12102(2)(C), 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual,' § 12102(2)(A)." *Sutton,* 527 U.S. at 489, 119 S.Ct. 2139. The Supreme Court outlined two ways an individual could fit within this provision:

(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or

(2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

*Id.* at 489, 119 S.Ct. 2139. Consequently, the covered entity must entertain misperceptions "either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment, when, in fact, the impairment is not so limiting." *Id.*

■■ The record does show that the Department regarded Van as unable to fill the position of correctional officer while his He Alc test showed a glucose level of 8.0% or higher. However, "being regarded as unable to perform only a particular job... is insufficient as a matter of law, to prove that the plaintiff is regarded as substantially limited in the major life activity of working." *Collado v. United Parcel Serv.,* 419 F.3d 1143, 1157 (11th Cir.2005) (citing *Murphy v. United Parcel Serv.,* 527 U.S. 516, 525, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999)). To be substantially limited in the

---

4. Disability discrimination actions under the FCRA are analyzed under the same framework as the ADA. *See Chanda v. Engelhard/ICC,* 234 F.3d 1219 (11th Cir.2000); *see also Holly v. Clairson Industries, LLC,* 492 F.3d 1247, 1256–57 (11th Cir.2007). Thus, the inasmuch as the Court refers to case law decided under the ADA, the Court applies the same reasoning to Plaintiff's FCRA claim.

major life activity of working, "one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139. As the Court explained in *Sutton,* the ADA does not prevent an employer from making employment decision based on physical characteristics.

> By its terms, the ADA allows employers to prefer some physical attributes over others and to establish physical criteria. An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity. Accordingly, an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment-such as one's height, build, or singing voice-are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job.

*Sutton,* 527 U.S. at 490–91, 119 S.Ct. 2139. Here, there is no evidence that the Department perceived Van's impairment of uncontrolled diabetes as a substantial limitation on Van's ability to work in a broad class of positions. In fact, the record evidence suggests otherwise-following Dr. Kaplan's assessment, the Department placed Van in a restricted duty position for six months.[5] Additionally, Van did not apply for any other County positions following Dr. Kaplan's assessment. Thus, Plaintiff has produced no evidence that the County excluded him from any other jobs on the basis of its perception that his diabetes was uncontrolled.

In 2004, the Eleventh Circuit held that "police officer" is too narrow a range of jobs to constitute a "class of jobs" as that term is defined by the EEOC regulations. *Rossbach v. City of Miami,* 371 F.3d 1354, 1361 (11th Cir.2004). Although the Eleventh Circuit has not considered whether "correctional officer" is a narrow class of jobs, this Court is convinced that the position of "correctional officer" likewise constitutes a single, particular job, which cannot constitute a substantial limitation of the major life activity of working. *See Muller v. Costello,* 187 F.3d 298, 313 (2d Cir.1999).

Plaintiff argues that because Van and his doctors felt he was able to work, and the County prevented him from working, he was regarded as disabled, but the cases cited for this proposition are distinguishable because in each the plaintiff was excluded from a broad range of positions. *Rodriguez v. ConAgra Grocery Prods. Co.,* 436 F.3d 468 (5th Cir.2006), despite the factual similarity that the employer determined that the plaintiff's diabetes was uncontrolled, differs from the instant case because the plaintiff was considered to be unfit to perform *any* position at its facility and thus the evidence showed that the defendant regarded the plaintiff's diabetes as substantially limiting his ability to engage in the major life activity of working. *Id.* at 477. In *EEOC v. Chrysler Corp.,* 917 F.Supp. 1164 (E.D.Mich.1996), a prospective employee was regarded as disabled when the employer not only did not hire him as an engineer following a medical exam revealing Type II diabetes and elevated blood sugar, but also imposed work restrictions on him that effectively

---

**5.** It is uncontroverted that the Department does not have any permanent light duty jobs. (Quinoa Dep. 11:3–8). All correctional officer positions require inmate contact. (McCray Dep. 61:6–62:3.) Pursuant to its employee fitness policy, the Department allows employ-ees a temporary restricted duty status to "enable[ ] employees to perform a job assignment that does not include the full scope of duties and responsibilities of their job classification." (DSMF, Ex. 4).

precluded him from a wide range of other jobs within the corporation.[6] *Id.* at 1169. Likewise, *Warmsley v. New York City Transit Authority*, 308 F.Supp.2d 114 (E.D.N.Y.2004), involved a policy that precluded the plaintiff from working at a broad class of jobs. The district court determined that defendant's 100% healed policy before reinstatement of civil servants following medical leave was evidence that defendant regarded the plaintiff, and every former employee who had taken medical leave as "substantially limited" because they were excluded from working in over 1,200 job titles. *Id.* at 120.

■ In this case, as previously discussed, Van has not produced evidence that he was precluded from a broad class of jobs; instead, only the specific position of correctional officer. There also is no evidence in the record that the County perceived Van as precluded from any position apart from correctional officer while he demonstrated an elevated He Alc level.[7] Therefore, the record lacks evidence that the County perceived him as being substantially limited in the major life activity of working. Rather, viewing the evidence in the light most favorable to Van, the County exercised its preference for certain limiting standards for correctional officers, and in the process rejected the conflicting medical opinions offered by Van's personal physicians. *See, Lomastro v. Caddo Parish*, 2006 WL 1805875 *5–6 (W.D.La.), *on*

*reh'rg*, 2006 WL 2331155 (2006) (rejecting *Rodriguez* and finding that applicant to a corrections deputy position was not regarded as disabled as a matter of law because the position was too narrow to constitute a "class of jobs"). Setting physical standards for specialized positions, as discussed in *Sutton*, 527 U.S. at 490–91, 119 S.Ct. 2139, is not prohibited by the ADA.

■ Additionally, the County was under no legal obligation to offer Van any accommodation, reasonable or otherwise because the Court has determined that he has not shown that he is disabled within the meaning of the ADA. *See, Johnston v. Henderson*, 144 F.Supp.2d 1341, 1353 (S.D.Fla.2001). Moreover, even assuming arguendo that Plaintiff had made a *prima facie* showing of disability, Plaintiff has offered no evidence showing that long-term or permanent restricted duty positions existed, and Defendant was not required to create such a position. *Terrell v. USAir*, 132 F.3d 621, 627 (11th Cir.1998); *see also, Howell v. Michelin Tire Corp.*, 860 F.Supp. 1488, 1492 (M.D.Ala.1994) ("Reasonable accommodation, however, does not require that an employer create a light-duty position or a new permanent position.") Thus, Plaintiff has not shown that Defendant was required to alter its policy of six months restricted duty followed by compulsory leave in order to reasonably accommodate Plaintiff.

**6.** The Court notes that the Sixth Circuit reversed the decision, finding that there was insufficient evidence to support the district court's conclusion that the defendant regarded the plaintiff as disabled as a matter of law. *EEOC v. Chrysler Corp.*, 172 F.3d 48 (6th Cir.1998).

**7.** Van's contention that Armando Quinoa, the Division Chief for Special Services, referred to him as disabled (Van. Dep. 26:23–27:15, 36:15–37:3, 42:23–25, 161:14–17) is not evidence that the County regarded Van as disabled. The undisputed evidence show that

Quinoa was not involved in the decision to place Van on restricted duty and later on compulsory leave. Quinoa's role was to match Van's medical restrictions, as set forth by Dr. Kaplan, to a restricted duty position available in the Department. (Quinoa Dep. 7–8, 11–12, 16–18). Remarks by nondecisionmakers or remarks unrelated to the decision-making process itself are not direct evidence of discrimination. *Bass v. Bd. of County Com'rs Orange Cty., Fla.*, 256 F.3d 1095, 1105 (11th Cir.2001) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)).

In conclusion, because Van is not a person with a disability as defined by the ADA, his claims that the County discriminated against him based on disability fail as a matter of law. Since the analysis is fundamentally the same under the FCRA, those claims fail as well. *See Chanda v. Engelhard/ICC,* 234 F.3d 1219 (11th Cir.2000). Further, although each of the parties addresses the issue of whether Plaintiff's resignation was voluntary, the complaint does not allege "constructive discharge" separately from the disability discrimination claims. The complaint alleges damages under the ADA and the FCRA, only. Because Plaintiff cannot make a *prima facie* showing that he was disabled under the acts, summary judgment in favor of Defendant is appropriate. Thus, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is GRANTED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment is DENIED.